DEXTER GILBERT AND WIFE v. J. J. CRANDALL.

*Sheriff.   Receiptor.   Bailment.   Contract.*

A receiptor of property attached, if entrusted therewith without the agency of the creditor, is the agent of the officer making the attachment, and for his torts or neglect in respect to the property the officer is liable.

The insolvency of the receiptor, and his consequent inability to respond to a demand on the execution for the property, furnish no defence for the officer in an action by the creditor for not safely keeping the property to respond to the execution.

CASE against the defendant, as sheriff of the county of Windham, for not safely keeping and delivering to the officer having an execution, five hundred barrels of flour attached by him on mesne process.   The plaintiff, proved the attachment, the recovery of judgment, and the issue of execution in the action, in the manner set forth in the declaration, together with the demand of the property and the refusal of the defendant to deliver the same. The defendant then offered evidence that after he attached the property he delivered the same for safe keeping to Calvin Townsley and Charles W. Townsley, two persons amply responsible for the amount, and took their receipt for the same, and that before the property was demanded of him, the receiptors had failed

and became wholly insolvent, whereby it became impossible for them to re-deliver the property, and so the defendant could not restore it at the time it was demanded of him. To this testimony the plaintiffs objected, and the court rejected it, to which the defendant excepted. No other question was made in the case.

The court at the April Term, 1860, REDFIELD presiding, gave judgment for the plaintiffs, to which the defendant excepted.

*Asa Keyes*, for the defendant.

*E. Kirkland*, for the plaintiff.

PECK J. This is an action on the case against the defendant, as sheriff of the county of Windham, for not safely keeping and delivering to the officer having the execution, five hundred barrels of flour attached by him at the suit of the plaintiffs against Calvin Townsley on the original writ.

The plaintiffs made the necessary proof to entitle them to recover—and among other things proved that the officer having the execution for collection made seasonable demand on the defendant for the property, and that the defendant did not deliver it.

The case shows that the defendant " then offered evidence that after he attached the property. he delivered the same for safe keeping to Calvin Townsley and Charles W. Townsley, two persons amply responsible for the amount, and took their receipt for the same, and that before the property was demanded of him, the receiptors had failed and become wholly insolvent, whereby it became impossible for them to redeliver the property, and so the defendant could not restore it at the time it was demanded of him." The county court, on objection by the plaintiffs, rejected the evidence, and gave judgment for the plaintiffs and the defendant excepts to the ruling of the court rejecting this testimony.

The only question is, whether the evidence offered by the defendant and rejected by the court, constituted a defence. On reference to the declaration it appears that Calvin Townsley, one of the officer's bailees, was the defendant in the action in which the property was attached. No evidence was offered to show that the

Gilbert et al. *v.* Crandall.

property was accidentally destroyed or lost without any fault or want of care on the part of the receiptors or the officer, nor what became of it, other than that by reason of the insolvency of the receiptors intervening between the delivery of the property to them and the time of the demand on the defendant, it became impossible for them to deliver it to the defendant, and the defendant to the officer having the execution, when he demanded it of the defendant. It is not shown or offered to be shown how the insolvency of the receiptors rendered it impossible for them to return the property. Whether it was by its having been in the possession of Calvin Townsley, the execution debtor and one of the receiptors, at the time of the insolvency of the receiptors, and having been attached as his property at the suit of other creditors, or whether the receiptors sold it, or in some other way converted it to their own use, and by reason of their insolvency were unable to respond for its value or pay the amount of the execution, the case does not disclose. If the former, then the defendant has been guilty of official neglect in not taking and keeping the property out of the possession of the debtor and in suffering it to remain in his possession and be attached by other creditors, unless an attaching officer has a right to substitute in place of the property a receipt or contract of the debtor, with good surety, to return the property or pay the debt, and then let the property go back and remain in the possession of the debtor, exposed to attachment by other creditors, and hold such contract or receipt at the risk of the attaching creditor as to the fidelity or ultimate solvency of the receiptors, thereby substituting the receipt for the property or a replevin bond under the statute. It is difficult to see how the insolvency of the receiptors could render it impossible for them to return the property unless it was attached by some other creditor of the debtor, for it could not legally be attached as the property of the other bailee. The court think that for this neglect of the officer in thus exposing the property to attachment by other creditors of the execution debtor the defendant is liable, and that he has no right to substitute such receipt at the creditor's risk of the ultimate solvency of the signers, but is bound to put and keep the property beyond the reach of other creditors, or use due and proper care to effect that end. One of

the main objects of an attachment on *mesne* process is to guard the debtor's property against that risk.

But suppose we take a broader view of the evidence offered and suppose the other alternative, that the receiptors converted the property to their own use, is the sheriff then excused from liability ? The bailees are the agents of the officer and not of the creditor ; they are selected by him and not by the creditor ; the officer has the special property in the goods by the attachment, and he can retake the property at any time he deems it necessary for his security, or for any other reason satisfactory to him; the contract is a personal one between him and the receiptors, and he, and not the creditor, has the remedy upon it; and in all this the creditor has no right to interfere or direct. This right of control should be in the officer rather than the creditor, for the debtor has an interest the officer is bound to protect. The bailees then must be regarded as the agents of the officer. The official duty of the officer is to safely keep the property and he, and he alone, is clothed with the requisite power to do so. This duty he owes to the creditor. He may perform it personally or by his agents selected by him for that purpose. In this view of the case the property has been eloined or put beyond the reach of the creditor's execution by the culpable act or neglect of the agents or servants of the officer who attached it upon the writ, and whose duty it was to keep it, and the officer must be held responsible for the wrongful acts or neglect of his agents or servants to whom he entrusted the discharge of this duty. This is but the application of a familiar principle. It is not a case that comes within the principle that the officer is not liable for a loss without any fault or want of care on his part. To bring it within that principle it must appear that the loss was without fault of himself or his servants or agents.

But it is claimed that it is a long settled practice for officers to take such receipts, and as they are recognized as legal contracts, the liability of the officer in such cases ought to be no greater than in case of taking bail on *mesne* process, replevin bonds, &c.; but it may be answered that it is a practice equally well settled to treat such receipts as at the risk of the officer so

Gilbert et al. *v.* Crandall.

far as it relates to the fidelity and final ability of the receiptors to respond.

But it will be seen that there is but a slight analogy between the two classes of cases. The taking of such receipts is entirely voluntary on the part of the officer while in the case of bail on *mesne* process and replevin bonds it is compulsory if the persons offered are good and solvent, and the officer is thereupon bound in case of such bail to let the defendant go at large, and in case of a replevin bond to deliver the goods and thereafter he has no control or custody or power over either. Hence in these cases the officer is only bound to see that the bail is good when taken, but in case of bailment of property attached the officer is under no such compulsory obligation, and his control over the property and right to repossess himself of it does not cease with the bailment but continues till the attachment is dissolved or the lien of the creditor is gone.

The *statute* provides a mode by which the debtor can obtain possession of his goods attached on *mesne* process and hold them pending the attachment,—that is by writ of replevin. In such case some other officer who has the writ of replevin takes a replevin bond and then takes the goods from the attaching officer by virtue of the writ of replevin and delivers them to the debtor, and then all liability of the attaching officer for the goods ceases; and if the replevin bond is good when taken, the creditor is obliged to rely solely on the bond; but if not good when taken, his remedy is not on the attaching officer but on the officer, who serves the replevin. We think it will not do to allow an attaching officer to substitute a personal contract to himself for the mode prescribed by statute and throw the risk on the creditor. If he wishes to be absolved from the care and custody of the goods and the consequent risk, he must let the defendant resort to the statute remedy,—and, then the creditor has a right to look to the replevin bond, and if that is not good when taken, to the officer who serves the replevin.

If an officer is absolved from the risk of the receiptor's intervening insolvency, it is difficult to see why the creditor should not in all cases be compelled to seek his remedy on the receipt when the receiptors fail to deliver the property, and prosecute the

receipt at *his own* expense. The general right to secure debts by attachment on *mesne* process seems to be peculiar to the New England States, and but little light is to be obtained from decisions elsewhere. It has existed nearly or quite ever since the organization of the State, and I understand the practice to have been uniform to hold the officer to the risk of the fidelity and solvency of his bailees or receiptors, and it may with propriety be said to be the common law of Vermont. Such I understand to be the rule in the other New England States, unless in New Hampshire a different rule may be established.

In New Hampshire the question, it seems, first arose in *Runlett* v. *Bell,* 4 N. H. 433, in 1831. One ground on which the court held the sheriff not liable in that case, was that pending the suit in which the goods were attached, the creditor applied to the sheriff for, and took the receipt and prosecuted it in order to try the title to the property in an action on the receipt, the receiptors claiming to own the property, and by the negligence of the creditor that suit was delayed so that the reciptors failed before judgment was obtained on the receipt, and the court held that the creditors had thereby adopted the receipt and made it his own, and absolved the officer. This was undoubtedly correct. It is true the court went further and said that if the officer is guilty of no negligence in taking the receipt the solvency of the receiptors is at the risk of the creditors. And the court also go so far as to say that if it was *apparently* good when taken the officer was not liable. They further say that " it is true that when goods are attached the sheriff may retain them in his own custody *in all cases* if he choose,"—and, evidently being pressed with the necessity of having some way by which the debtor could obtain possession of his goods, they justify the officer in taking a receipt at the risk of the creditor. It would seem from the whole language of the court that in that State there was no mode provided by statute by which the debtor could obtain his goods pending the attachment, and if so, the main reason on which the court based their decision of this point in that case, fails here, where the legislature have provided a remedy for the evil by writ of replevin. If it is a good defence in a suit by the creditor for the officer to show that he took a good receipt it must be so

14

in a suit by the debtor for the property when the original suit terminates in favor of the defendant, or the attachment or lien is otherwise discharged. This would be a severe doctrine to apply to the debtor in a case where he has had no agency in procuring the property to be receipted.

We do not intend by this decision to decide that an officer who attaches property on *mesne* process is liable in case of loss without fault or want of prudence, but simply to decide that the default of his agents or servants is his default, and that he is liable not only for his own torts and neglect, but also for the default and neglect of his agents or servants, and that his bailees or receiptors, selected without the procurement or concurrence of the creditors, are his agents or servants. Therefore the evidence offered was properly excluded.

Judgment affirmed.