### J. W. McDERMOTT *v.* R. B. JAQUITH ET AL.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed October 15, 1914.

*Attachment—Receiptor—Nature of Liability—Conclusiveness of Receipt—Enjoining Suit at Law and Drawing Case Into Equity—Effect on Liability of Receiptor of Attached Property.*

Equity will not enjoin a suit at law and compel the parties to litigate their rights in the court of chancery, unless thereby all the rights involved can be as well protected in the equity suit as in the action at law.

The taking of a receipt by an officer for attached property is a wholly voluntary act, is solely for the benefit and security of the officer, and he may retake the property at any time, and for any reason; and the receiptor acquires no interest in the property as against the officer.

Where attached property is receipted, the valuation of the property stated in the receipt is conclusive upon both the officer and the receiptor, whether the action is assumpsit or trover, and the receiptor is conclusively bound by the terms of the receipt, though it be given for property not in fact attached, or even for property that the debtor did not have.

An officer who has taken a receipt for attached property cannot show in discharge of his liability that the receiptor has become insolvent since the receipt was given.

Where a pending action at law was enjoined and the parties forced to litigate their rights in chancery, where plaintiff filed a cross-bill and thereon had a decree for the full amount claimed by her in the suit at law, with the provision that the suit at law be discontinued on payment of the decree, that decree contemplated a judgment for plaintiff in the suit at law, if the decree was not paid, and so receiptors of the property attached in the suit at law cannot escape liability to the officer on the receipt on the theory that plaintiff's claim was merged in the decree so that no execution could ever issue in the suit at law.

ASSUMPSIT on an officer's receipt for attached property. Heard on an agreed statement of facts at the December Term, 1912, Windsor County, *Stanton,* J., presiding. Judgment, *pro forma,* for the plaintiff. The defendant excepted. The opinion states the case.

*W. B. C. Stickney* for the defendant.

If no judgment can be rendered in favor of the plaintiff Perry in the suit in which the property receipted for by these defendants was attached by McDermott, no execution can issue to be levied upon the attached property, and McDermott incurs no liability to the creditor for failing to charge the attached property; and the same having been returned to the owner, he has incurred no liability to the debtor.

No judgment can be rendered in favor of the attaching creditor, her claim is merged in the chancery judgment. Higgins' Case, 6 Coke 46 b.; *Hayward* v. *Clark,* 50 Vt. 612; *Bemis* v. *Jennings,* 46 Vt. 45; *Squires* v. *Whipple,* 2 Vt. 111; *Lowry* v. *Stevens,* 6 Vt. 113, 115, 117.

*Charles S. Chase* and *W. R. Daley* for the plaintiff.

MUNSON, J. The defendants are sued as receiptors of property attached by the plaintiff in a suit brought by Philura A. Perry and others against the O'Brien Lumber Company. While this suit was pending, the O'Brien Lumber Company brought a
16

suit in equity against Philura A. Perry, Bert L. Perry and Milon F. Perry, and procured therein an injunction restraining the defendants from proceeding further with the suit at law, and an order directing that the matters in issue in that suit be tried out in the chancery suit. The defendants made an unsuccessful attempt to have the injunction dissolved; after which Philura A. Perry filed a cross-bill, and such proceedings were had in equity that the defendants in the original bill obtained a judgment for $4,400, which included the full amount claimed by said Philura in her suit at law, as prayed for in her cross-bill. It was ordered in the decree that all the suits at law be discontinued upon payment of the aforesaid judgment. Execution was issued on the judgment, but no part of it has been paid; and Philura A. Perry has received nothing on account of the issues involved in her suit at law, and that suit is still pending.

The receipt fixes the value of the attached property at $3,000. The writing is entitled in the suit at law, and the writ is described in the body of it; and the undertaking is that the receiptors will keep the property safely, and return it on demand to the attaching officer, or to his order, or to the bearer, or to any proper officer holding any execution that may issue on a judgment in said cause. Upon receiving the receipt the plaintiff released the property from attachment, and on the following day the defendants delivered the property into the possession of the O'Brien Lumber Company. Neither the plaintiff nor Philura A. Perry consented to the return of the property. The plaintiff demanded the property of the defendants before bringing suit, but none of it has been returned or accounted for.

The defendant Jaquith was one of the principal stockholders and the president of the O'Brien Lumber Company, and the other defendants were the attorneys of that Company in said suit at law, and were the solicitors who brought the chancery proceeding in which the suit at law was enjoined.

The defendants refer us to several of our decisions in which the nature of an officer's receipt in the usual form has been considered and characterized. It is said that the receiptor's obligation, while absolute in terms, is contingent by operation of law; that his undertaking is to return the property to save the officer from liability to the attaching creditor or the owner; and that he can defend by showing whatever will relieve

the officer from liability to anyone on account of the property not being surrendered. *Adams* v. *Fox,* 17 Vt. 365; *Polley* v. *Hazard,* 70 Vt. 220, 40 Atl. 36.

The defendant's argument is that no judgment in the suit at law can be rendered in favor of the attaching creditor because her claim is merged in the chancery judgment; that consequently no execution can ever issue to be levied on the attached property; so that the officer cannot be held liable to the creditor for failing to charge the property attached; while the return of the property has relieved him from liability to the debtor.

If this view is controlling, it is evident that the action taken by the court of chancery at the instance of the debtor, in compelling the creditor to litigate her claim in that court, has deprived the creditor of her security for the claim. It is certain that such a result would be entirely inconsistent with the theory on which equity proceeds in drawing to itself an entire controversy regarding some features of which its jurisdiction is invoked. This is not to be done in cases where a suit at law is pending unless all the rights involved can be as well protected in the equity suit as in the action at law.

Some light is thrown upon this subject by *Perry* v. *Jaquith,* 86 Vt. 556, 86 Atl. 1003, a case which involved another branch of this same controversy. There a release of the attachment was procured by the delivery of a writing entitled in the cause in which the property was attached, by which the signers held themselves liable to pay any judgment, not exceeding a certain amount, which the plaintiff might recover of the defendant. This suit was covered by the same injunction and order which controlled the disposition of the suit in which this receipt was given, and the claim of the plaintiff was asserted and established in equity in the same manner, and was included in the same $4,400 judgment. In disposing of the case the Court said that the liability assumed by the defendants was not in terms limited to such judgment as might be recovered in the particular action; that the fair construction of the undertaking was that the defendants were to pay such judgment as might be recovered on the claim in suit; that the fact that the plaintiff was enjoined from proceeding in the suit at law and compelled to establish the claim in chancery did not discharge the obligation of the defendants, particularly since the decree in chancery

provided for the discontinuance of the suit at law only upon payment of the decree. The defendants contended that they were released because the action or cause of action to which their obligation related was merged in the judgment; and it was said with reference to this contention that their obligation was to pay, not the claim, but the judgment obtained on it, and that it was immaterial, in the circumstances, that judgment was obtained in chancery rather than at law.

It cannot be said that this decision is entirely applicable here. It may properly be claimed that this obligation is in terms confined to the particular suit in which it is entitled. Moreover this obligation differs in nature from that assumed in the case cited. The undertaking in that case was to pay the judgment when obtained; the undertaking here is to keep the attached property and return it on demand. This is the ordinary obligation of a receiptor, and the officer can have no recovery if the action taken has relieved him from all liability.

The claim made by counsel, and the questions which have arisen in the consideration of the case, are thought to call for a somewhat particular inquiry as to the view which this Court has taken of the nature of a receiptor's obligation; and in pursuing this inquiry we do not overlook the fact that the statements gathered from the opinions were made in cases where there had been a judgment in the suit in which the property was attached.

The first reported utterance upon the subject is that of Chief Justice Nathaniel Chipman, made in 1791 in charging the jury in an action on a sheriff's bond for liberty of the prison. It was then said: "The officer had taken the cattle, so far as to have a lien upon them, for the satisfaction of the execution. On receipt, I do not consider that the officer wholly parts with that lien, and trusts to the receipt only. The property is delivered out of his actual custody, for the convenience of the defendant. The officer is therefore less secure of the property, but his lien still continues. He may take it without the leave of the person receipting." *Pierson* v. *Hovey*, 1 D. Ch. 51.

The next reported consideration of the subject was in 1824; Chief Justice Skinner delivering the opinion. The form of action does not appear. The question, as stated in the opinion, was whether an officer could maintain a suit against his receiptor without showing special damage. The undertaking,

as expressed in the receipt, was to redeliver the property to the sheriff when demanded, or pay all cost and damage. It was claimed that as the promise was in the alternative, the receiptor might elect to pay the damage, and that the damage was not the value of the property, but only what the officer might be obliged to pay by reason of his not having the property ready to be taken on execution. It was said that this would doubtless be the law if the officer's liability was to the creditor alone, but that he was liable to the debtor as well. The court then proceeded: "It evidently appears from the tenor of these receipts that officers intend to secure to themselves a right of action at any time, when they may consider it necessary to demand the property for their own safety. The neglect of the person receipting to return on demand at any time will subject him to damages to the amount of the value of the property." *Catlin* v. *Lowrey*, 1 D. Ch. 396.

At the Essex term in March, 1832, a declaration in assumpsit on a receipt was held insufficient. The opinion was by Judge Hutchinson. It appears from the statement of the case that nothing was said in the declaration about the return of the writ, or any proceedings in the suit, or any circumstance showing a continuance of the lien created by the attachment. This was clearly a failure to show the existence of a lien. But in disposing of the case the court said the pleader should have added the return of the writ, the entry of the action, proceedings therein to final judgment, the taking out of execution, and the delivery of the same to the officer within thirty days from the date of the judgment. But this recital is hardly the same as holding that all this is essential in all cases. The judges were then the reporters of their decisions, and the head-note of the case is this: "A declaration on a receipt, taken by an officer for property attached upon mesne process, should contain sufficient averments to show that the lien created by the attachment has been preserved, * * " *Cooper* v. *Cree*, 4 Vt. 289.

In another case in assumpsit, heard at the same term, the opinion was by Judge Williams, and the point decided was that a further attachment of the property by the same officer discharged the receiptor. In the course of the opinion it is said: "Considering this as an ordinary case between a bailor and his bailee, it would be too plain to admit of a controversy.

\* \* \* The case under consideration is one of that character. The plaintiff by the attachment had the possession, and the right to the possession, of the property attached; the defendants, the receiptsmen, took the property to keep for him. He had a right to retake the same at any time against their consent, and when he did take it, their contract to redeliver it to him was fulfilled and at an end." *Beach* v. *Abbott*, 4 Vt. 605.

It was said a year later, upon the authority of the first and last of the cases above reviewed, and in disposing of the same question as that presented in the last, that the officer taking a receipt does not thereby part with his lien on the property, but may take it into his possession at any time. *Rood* v. *Scott*, 5 Vt. 263.

The position taken in *Beach* v. *Abbott*, that the relation between the officer and the receiptor is merely that of bailor and bailee, was elaborated in a case decided soon after, where the only question was whether trover was an appropriate remedy. It was there said by Judge Redfield that the common receipt taken in these cases is not intended to vary the obligation resulting from the relation of bailor and bailee, and in fact does not; that the receiptman has a mere naked custody of the property, and that the officer has a right to resume the actual custody at any time. *Sibley* v. *Story*, 8 Vt. 15.

Soon after this it was urged in defence that the receipt "is in the alternative, giving the defendant the right to return the property or indemnify the plaintiff at his election; and that if he did not return the property on demand, the alternative of the contract became absolute, and that no action would accrue on the contract till the plaintiff had been damnified"; and the court pronounced this an unsound construction of the contract, and not conformable to the intent of the parties. *Page* v. *Thrall*, 11 Vt. 230.

Not long after, in disposing of a case where the receipt contained special provisions and the property had been sold by consent, Judge Bennett restated the general doctrine in these terms: "When the property is returnable on demand, the officer has the right, at any time, to take it from the possession of the receiptors by means of his original lien; and when thus taken, no action can be sustained upon the receipt." *Kelley* v. *Dexter*, 15 Vt. 310.

Two years later, in 1845, in a case where the receiptor defended on the ground that the property belonged to him at the time of the attachment, it was said: ''The question is, whether the officer is answerable over to any one; and if not, the defence is received, to prevent circuity of action. * *   The receiptman undertakes to redeliver the property, or show what will excuse the officer from all liability to any one on account of the property not being surrendered. *Adams* v. *Fox,* 17 Vt. 361.

A re-examination of the subject was required in 1860 and the years immediately succeeding. In a case where the officer had attached property by leaving a copy in the town clerk's office, and the defendants had subsequently given their receipt for it, it was said that by virtue of his attachment the officer was entitled to take and hold the actual custody of the property; that in legal contemplation it was in his custody and possession from the time of the attachment; that by so attaching the property he assumed an accountability for it, in the first instance, both to the creditor and the debtor; and that while that accountability continued he was entitled to possess, control and dispose of the property in fulfilment of his duties to the parties. *Mason* v. *Whipple,* 32 Vt. 554.

In a case where the officer failed to charge the attached property in execution by a seasonable demand, it was said: ''The legal meaning of the contract of the receiptor is, that he will have the property attached forthcoming, upon demand made for the same by the officer, to respond (to) the execution that may issue upon the judgment obtained in the suit in which the property is attached; and (that) if he fail to do so, he will pay the execution and costs.'' *Dewey* v. *Fay,* 34 Vt. 138.

In a case where it was held. that an officer recovering in trover against a receiptor was not entitled to a close jail certificate, it was said by Judge Poland, in a discussion confessedly unnecessary to the decision of the case, and in language apparently somewhat influenced by the nature of the question passed upon, that it was universally understood that the officer relies for his indemnity upon the receipt, and not upon the property; that the officer had in form been allowed to treat the receiptor as bailee of the property, and maintain trover for a nondelivery on demand; but that this had been rather a legal fiction,—the receipt having been treated substantially as a contract between the receiptor and officer, measur-

ing. their respective rights. And the opinion accounts for a decision deemed open to criticism, as having been made on the ground that trover had always been allowed on officers' receipts, although they were purely matters of contract between the parties. *Soule* v. *Austins*, 35 Vt. 514.

In a case touching the necessity of a demand it was said: "The receiptor is the bailee of the property and holds it for the officer, upon the condition that the liability of the officer for it to the attaching creditor becomes fixed by duly charging the property in execution. In the contemplation of the parties, as shown by the contract of bailment, the property is to remain in the possession of the receiptor until it is called for by the officer or otherwise duly demanded, and a demand on the receiptor for it is made essential to perfect a cause of action upon the receipt, as well by the very nature of the bailment as by the express terms of the contract. *Carpenter* v. *Snell's Est.*, 37 Vt. 255.

In a subsequent opinion by the same judge the position of the Court was stated as follows: "The receiptor is treated as only the temporary bailee of the property, with the right to use it by the consent of the debtor, but liable at any time to be called to account if guilty of converting the property by any abuse, or wrongful use, or refusal to deliver on demand." *Tinker* v. *Morrill*, 39 Vt. 477, 94 Am. Dec. 345.

The relation of officer and receiptor has been under consideration in two cases of a later period. In the first it was said: "An officer can recover of the receiptor so long as the lien of the creditor is in force, and after that ceases until the property, if the officer had taken it into his possession, is restored to the debtor or the rightful owner." *Roberts* v. *Carpenter*, 53 Vt. 678. In the last it was said: "The receiptor's obligation, although absolute in its terms, was contingent by operation of law. He was to return the property to save the officer from liability to the attaching creditor or the owner. He can defend by showing whatever will relieve the officer from this liability." *Polley* v. *Hazard*, 70 Vt. 220, 40 Atl. 36.

It seems apparent from this review of the cases that there is no real diversity of holding, and not much diversity of expression. But the rights and liabilities of officer and receiptor may be shown more definitely by some further references. The taking of a receipt by the officer is purely a voluntary act.

*Batchelder* v. *Frank,* 49 Vt. 90. The receipt is taken solely for the benefit and security of the officer. *Paddock* v. *Palmer,* 19 Vt. 581. The officer can retake the property at any time, for any reason satisfactory to him. Peck, J., in *Gilbert* v. *Crandall,* 34 Vt. 188. The receiptor acquires no interest in the property as against the officer. *Parsons* v. *Strong,* 13 Vt. 235. The valuation of the property as given in the receipt is conclusive upon both parties. This is so whether the action is assumpsit or trover. In either the contract of the parties will govern as to the rule of damages. *Parsons* v. *Strong,* 13 Vt. 235; *Brown* v. *Gleed,* 33 Vt. 147. The officer remains responsible for the safety of his attachment. He cannot show in discharge of his liability that the receiptor has become insolvent since the receipt was taken. *Austin* v. *Burlington,* 34 Vt. 506. The obligation of the receiptor is merely collateral to the debt, and cannot exist after the officer's liability has ceased. *Paddock* v. *Palmer,* 19 Vt. 581.

Property is sometimes receipted to be held by the receiptor. It is sometimes receipted to be left with or returned to the defendant for his use. It is sometimes receipted to be used up or sold by the defendant. A receipt is sometimes given for property which has not been attached, and even for property which the debtor does not have. These different conditions have no bearing upon the effect of a demand and the right to recover on the receipt, for the receiptor is conclusively bound by the terms of the receipt. *Spencer* v. *Williams,* 2 Vt. 209, 19 Am. Dec. 711; *Allen* v. *Butler,* 9 Vt. 122. The undertaking evidenced by a receipt in common form and the legal duty of a mere bailee are the same—to deliver on demand; and when there is a refusal to deliver on demand the right of action is complete, in either assumpsit or trover.

We are now ready to consider the defendant's claim that the officer is entirely relieved from liability to the creditor, and any questions of procedure which may arise in connection with it.

The suit at law is still pending. It was not to be discontinued unless the chancery judgment was paid. It is not to be supposed that the court intended by this a perpetual continuance upon the docket. Then if the chancery judgment was not paid the law case could, upon a withdrawal of the chancellor's hand, be proceeded with. And if to be proceeded with it was to be

done to some purpose—the recovery of a judgment. In other words, the judgment in chancery was not to end the possibility of a judgment at law unless satisfied. So the cause of action in the suit at law was not unconditionally merged in the judgment in chancery. The court which enjoined the suit at law and required the plaintiff to litigate her claim in equity, and in giving her judgment in equity made its payment a condition on which the suit at law might be discontinued, has retained a hold upon both cases which will permit the accomplishment of its manifest purpose through a further proceeding in some form. That process may involve the rendition of a judgment at law on the facts conclusively determined in equity. So the suit in which the property was attached is still alive, with the possibility of a judgment in favor of the plaintiff.

In view of the uniform tenor of the decisions above examined, the fact that none of the suits were brought before judgment was obtained in the suit in which the property was attached, cannot be considered suggestive of any serious difficulty in the way of a prior commencement. This is especially so, in view of the facts that the receipt it taken solely for the benefit of the officer, that he has no control over the progress of the suit in which the property is attached, that his safety may be threatened at any time by a change in the financial condition of the receiptor, and that by all applicable legal principles his right of action is complete when redelivery is refused. We have no doubt that our procedure is sufficiently elastic to afford protection to the officer without embarrassing either creditor or debtor in the assertion of their rights against him. In view of the fact that the undertaking of the defendants was collateral to the obligation of the debtor, and that the amount of the receipt might exceed the sum recovered, the county court might in its discretion have continued the case to await the determination of the suit in which the attachment was made. But the case is here on exceptions to a judgment entered below, and is to be disposed of in accordance with legal rules. The rights of an officer who is still under a liability to account for attached property released on a receipt are well settled. He is entitled to have the property returned on demand, or to have judgment for the amount named in the receipt. The plaintiff is entitled to such a judgment here.

*Judgment affirmed.*