TOWN OF LOWELL *v.* H. D. STANNARD AND TOWN OF BARTON.

January Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 10, 1916.

*Constables—Liability—Attachment—Receiptors—Care of Property Attached—Liens—Waiver of Priority.*

Expenses incurred by a judgment creditor in prosecuting a suit against the receiptors for personal property under attachment, is not damage accruing by the neglect or default of a constable which a town is required to make good under P. S. 3445.

Where property attached by a constable is receipted for, and, while in the control of the receiptors, is sold by the defendant in the suit, *held*, the fact that the constable thereupon took actual possession of the goods remaining unsold, thereby releasing the receiptors from further liability, was not, standing alone, such neglect or default as would make the town of which the constable was an officer liable under P. S. 3445.

A town is liable under P. S. 3445, for the neglect or default of its constable, for property under attachment by him, so long as his duty as attaching officer continues.

The duty of a constable to care for property attached by him does not cease when his term of office expires.

An attaching officer is bound to exercise reasonable supervision of the property attached to preserve it for execution; and must see to it not only that the property is not lost, but that its identity i preserved.

Whether an attaching officer is negligent in caring for the property attached is a question of fact.

*Held*, under the circumstances, the attaching officer was negligent in failing to keep himself advised as to the identity of the property attached.

Where the plaintiff town was ignorant of the fact that certain property sold under order of the referee in bankruptcy, was property upon which it had an attachment lien, *held*, it did not waive its right to priority in the distribution of the proceeds of the sale, by failing to assert its lien.

ACTION on the case under P. S. 3445 to recover for the alleged default and neglect of the defendant Stannard, as constable of the town of Barton, in caring for certain property attached by him on a writ issued in favor of the plaintiff. Plea, the general issue, with notice of special matter in defence. Trial by court, March Term, 1915, Orleans County, *Stanton*, J., presiding. Judgment for the plaintiff. The defendants excepted. The opinion states the case.

*W. W. Reirden* and *J. W. Redmond* for the defendants.

*C. G. Austin & Sons* and *Young & Young* for the plaintiff.

TAYLOR, J. The action is case to recover for the alleged neglect of defendant Stannard as constable of the town of Barton in caring for certain property attached by him on a writ in favor of the plaintiff. The suit is the sequel of *Town of Lowell* v. *Stephenson*, in which final judgment passed in the county court, and *Stannard* v. *Tillotson et al.*, reported in 88 Vt. at page 1, 90 Atl. 950. . It was tried by the court on an agreed statement of facts, except as to certain disputed questions which the court resolved on evidence. The history of the transactions from which the suit arises will be found in *Stannard* v. *Tillotson et al.*

On the question of Stannard's conduct the court made the following finding: "The fact that the defendant Stannard served the writ in which the Barton Savings Bank and Trust Co. was plaintiff, * * * and thereby discharged the receiptors and the fact that he did not keep the property so that it could not be attached by another officer, and his letting go of it and permitting

it to go into the hands of another officer and into the court of bankruptcy without objection upon his part, and never doing anything to protect it against that court, and all the facts that are disclosed by the agreed statement of facts, we find the defendant Stannard did not act as a prudent man in the circumstances * * * In no other particulars do we find that he failed to act as a prudent man.''

There was judgment below against both defendants for the balance of the judgment in *Lowell* v. *Stephenson* with interest after deducting the net proceeds of the judgment against the receiptors less the expenses of the suit and the proceeds of the sale of the real estate covered by the attachment. The case is here on defendants' exception to the judgment.

The judgment below being joint must be tested by the rules applicable to the liability of the town, which extends no further than neglect on the part of its constable is established. It is only liable by virtue of P. S. 3445, which provides that a town shall make good the damages which accrue to a person by the neglect or default of its constable, to be recovered in an action on the case. The findings as to Stannard's defaults lack definiteness. As we read the findings they amount to saying that Stannard's only neglect or default pertained (1) to the service of the writ in the Bank's suit against Stephenson, at which time he took possession of the property and thereby released the receiptors from further liability; (2) to the fact that he did not retain the possession instead of "permitting it to go into the hands of another officer and into the court of bankruptcy without objection"; (3) to the fact that he did nothing "to protect it against that court."

The original attachment was by a copy lodged in the town clerk's office. Later, and with the knowledge and approval of plaintiff's attorney, the property was receipted by the Tillotsons who, it is agreed, were financially responsible. Stannard did not withdraw the copy lodged in the clerk's office nor make and cause to be recorded the certificate required in certain circumstances by P. S. 1454. The property in question here was a stock of goods in a store conducted by Stephenson. The goods were left in Stephenson's possession who, after they were receipted, continued the business and had disposed of the larger part thereof when Stannard took possession on July 27, 1911. It is not claimed that he was in default in taking receiptors and

leaving the property in Stephenson's possession; in fact negligence in that regard is negatived by the findings. The receiptors were called upon and compelled to make good the loss of security occasioned by Stephenson's sales of the receipted goods. The plaintiff received full compensation therefor through the judgment in *Stannard* v. *Tillotson et al.* It claims to recover in this action the expenses incurred in prosecuting the claim against the receiptors and relies upon the court's finding that Stannard and not the plaintiff was the real party in that suit. Whatever its right in that regard may be against Stannard individually, which we have no occasion to consider, the expense incurred by plaintiff in that suit was not damage which the defendant town can be required to "make good." There is no basis for including as damages in this action anything that related to the property disposed of by Stephenson.

Nor was the fact standing alone that Stannard took actual possession of the goods remaining unsold, thereby releasing the receiptors from further liability, such neglect or default as to make the defendant town liable. It was lawful for him to do this at such time as seemed advisable and for any reason deemed by him sufficient. It was a matter of no concern to the plaintiff, so long as the property was preserved. *Gilbert et al.* v. *Crandall*, 34 Vt. 188; *Stannard* v. *Tillotson et al.*, 88 Vt. 1, 11, 90 Atl. 950; *McDermott* v. *Jaquith*, 88 Vt. 240, 92 Atl. 230. See P. S. 1454. The question is narrowed, then, to Stannard's conduct with reference to the property that remained at the time he took actual possession July 27, 1911. He went into possession on that day in connection with the service of a writ in favor of the Barton Savings Bank and Trust Co. against Stephenson and retained such possession until August 7, 1911. On the latter date, acting under instructions of the Bank's attorney, he withdrew the attachment in the Bank suit and surrendered possession of the property to Stephenson. Thereupon the Bank caused it to be reattached by another officer by lodging copies in the town clerk's office. But if this conduct was such neglect or default as would make the defendant town liable, the plaintiff was not damnified thereby; for before this attachment matured as against bankruptcy Stephenson was adjudged a bankrupt and the property so attached passed unimpaired into the hands of the trustee in bankruptcy.

At the time Stannard served the writ in the Bank suit he was acting as deputy sheriff, his term as constable having expired. It is contended that the defendant town is not liable for any default on Stannard's part after he ceased to be constable, and much of defendants' brief is devoted to an argument in support of this contention. But the town was liable under the statute for Stannard's misconduct, if such there was, so long as his duty as attaching officer continued. His duty to care for the attached property did not cease when his term as constable expired. *Lawrence* v. *Rice,* 12 Metc. (Mass.) 527.

The cases cited in support of the claim relate to the liability of sureties on official bonds, where the liability is contractual and not statutory. It is argued that the provisions for a bond to indemnify the town required of certain town officers including the constable indicates a legislative intention to limit the town's liability for defaults of its constable to those committed during the term, since the town would be unable to protect itself against defaults after the term expired. But there is nothing to prevent such a wording of the bond as to cover defaults of duty like that claimed here; so there is little force to the argument.

Stephenson's trustee in bankruptcy took possession of the real estate and the remaining personal property covered by the original attachment and thereupon preferred a petition to the bankruptcy court setting forth the facts concerning the attachment and subsequent proceedings affecting the attachment lien and representing that it would be for the interest of the bankrupt estate that the property be sold. He asked for authority to sell the same free of incumbrances, the proceeds to be held in lieu of the property to await the adjudication of the existence of liens and other rights. The plaintiff had notice and appeared at the hearing on this petition. Upon hearing it was ordered that the trustee be authorized to sell the real estate and personal property described in the petition at public auction to the highest bidder for cash, that the sale of the real estate and personal property be made separately and that the trustee report to the court the amount received for each. It was further ordered that the proceeds be held in lieu of the property, subject to the same claims, rights and liens as then rested thereon, to be thereafter determined. Pursuant to this order the trustee sold the real estate for $2,100 and the personal property for $1,315 and reported his doings to the court, which confirmed the sale.

Later the plaintiff petitioned the bankruptcy court for an order that the trustee pay over to it the proceeds of the sale of the real estate in excess of the bankrupt's homestead right therein; and such proceedings were had on this petition that the court ordered the trustee to pay over to the plaintiff $1,600 on account thereof to be applied in part satisfaction of its judgment. Neither of the defendants were made parties to these proceedings in the bankruptcy court and it does not appear that they had notice thereof.

Plaintiff did not assert an attachment lien on the personal property and suffered the proceeds of its sale to be administered as common funds of the bankrupt estate. As explaining the failure to assert the lien it is agreed that prior to the trial of *Stannard* v. *Tillotson et al.*, at the March Term, 1913, of Orleans County Court, plaintiff's knowledge of the identity of the personal property covered by the receipt with that which went into the hands of the trustee in bankruptcy was confined to knowledge of the testimony given by Stephenson when examined in the bankruptcy court and the return of Stannard on the execution, which he returned *nulla bona*. It appears that before the proceedings relating to the sale Stephenson was examined as a bankrupt and then testified in substance that all of the goods that he had in the store at the time of plaintiff's attachment had been sold and replaced by new goods before his adjudication in bankruptcy. The fact was that a considerable part of the goods in the store at the date of the adjudication were covered by plaintiff's attachment, having been there when the attachment was made. It is agreed that the value of such goods was $2,117. It is apparent that plaintiff's failure to follow up the proceeds of the sale of the personal property was due to misplaced confidence in Stephenson's testimony coupled with the belief asserted in the suit against the receiptors that they were liable for the total sum fixed in the receipt.

We have no occasion to consider whether anything that Stannard did with reference to the personal property discharged plaintiff's attachment lien. Both parties claim that it was a valid subsisting lien when the trustee in bankruptcy took possession. Plaintiff insists that it was valid against bankruptcy and that the bankruptcy court and its trustee had no right thereto as against the attachment. The contention is that Stannard was negligent in that he did nothing to preserve the property, but

permitted the trustee to take possession thereof, sell it and distribute the proceeds discharged of the lien; that he did nothing to keep track of the property attached or to determine whether any of it went into the hands of the trustee in bankruptcy.

Granting, though not deciding that Stannard could have retained possession against the trustee and prevented the bankruptcy court from acquiring jurisdiction of it, plaintiff's damage did not accrue from his failure to do so. The property was in Stephenson's possession at the time he was adjudged a bankrupt and the trustee took control of it as he had a legal right to do. (*White* v. *Schloerb,* 178 U. S. 542, 44 L. ed. 1183, 20 Sup. Ct. 1007), but his title was subject to all valid liens, including plaintiff's attachment. *Stoddard* v. *Locke et al.,* 43 Vt. 574, 5 Am. Rep. 308. Thus having the custody of the property the bankruptcy court had jurisdiction to determine the validity and extent of plaintiff's lien. 7 C. J. §359 *et seq.* But plaintiff lost nothing by the change of forum, since the questions were to be there determined by the local law and it could as well assert its lien there as in the courts of the state. The proceedings in the bankruptcy court were all calculated to protect plaintiff's rights, if only they had been asserted. It is apparent that they were lost solely through ignorance of their existence. It remains to consider whether this was chargeable to Stannard's neglect of duty.

It does not appear that Stannard knew of the proceedings in the bankruptcy court with reference to the sale of the property and the disposition of the proceeds; nor does it appear that he was aware that any property covered by the attachment was being administered there. It also may be fairly inferred that he was likewise deceived by Stephenson's testimony. On the other hand it does appear that with knowledge that Stephenson had been selling the goods under attachment he did nothing to keep track of the property or to determine whether any that remained was covered by the attachment. He was bound to exercise reasonable supervision of the property to preserve it for execution. It was his duty not only to see to it that the property was not lost but as well that its identity was preserved. Whether he was negligent in this matter was a question of fact. The ultimate question is whether the court's finding of negligence covers this failure. We think it does. Presuming as we must in favor of the judgment, the finding that Stannard was negligent in that

he did nothing to protect the property against the bankruptcy court must be held to include his failure to keep himself advised as to the identity of the property.   In the exercise of due care he would have known that property which it was his duty to preserve for execution was in danger of being disposed of, discharged of the lien.   In such case it would at least be his duty to acquaint the plaintiff with the true state of the facts that it might protect its rights.

It is contended that the plaintiff should have asserted its lien on the personal property as well as the real estate; and that when it neglected to do so it waived its rights to priority.   But the facts do not support a waiver.   While plaintiff had notice of the petition for the sale of the property and the court's order thereon, it did not know that it had a lien on the personal property and so had an interest to be protected.

We hold that the plaintiff is entitled to recover in this action such damages as accrued to it through Stannard's failure to preserve the identity of the attached personal property; but from what has gone before it is evident that the court below erred in arriving at the sum fixed as damages.   It would be entitled to recover only what it lost through Stannard's default which, on the agreed facts, would be the proceeds of the sale of the personal property, to which its lien was transferred by order of court.   The judgment should have been for $1,315 with interest from November 25, 1912, the date when the proceeds of the sale were available.

*Judgment reversed and judgment for plaintiff for $1,315 with interest from November 25, 1912, without costs in this Court.*